IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GENETTLE T. GATSON, Individually
as Heir of James Lee and as Administratrix
of the Estate of James Lee; MARCUS GORE,
Individually as Heir of James Lee; DERRICK J.
GATSON, Individually as Heir of James Lee; and
OPELEAN LEE, Individually as Heir of James Lee                    PLAINTIFFS

v.                                           CIVIL ACTION NO. 1:12-CV-00240-GHD-DAS

WINSTON COUNTY, MISSISSIPPI;
SHERIFF JASON PUGH, in His Individual
and Official Capacity as Sheriff of Winston County,
Mississippi; TIM PALMER, In His Individual
and Official Capacity as Warden of the
Winston-Choctaw Regional Correctional Facility;
NURSE LYNN WHITE, in Her Individual and
Official Capacity as an Employee of the
Winston-Choctaw Regional Correctional Facility;
CITY OF LOUISVILLE, MISSISSIPPI;
JOHN AND JANE DOES 1–10, Individually and in Their
Official Capacities as Deputy Sheriffs, Jailers, and
Medical Healthcare Providers at the
Winston-Choctaw Regional Correctional Facility; and
UNKNOWN NURSE, a Jane Doe in Her Individual
and Professional Capacity as Nurse at Winston-Choctaw
Regional Correctional Facility                                   DEFENDANTS

## MEMORANDUM OPINION GRANTING
## MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
## PURSUANT TO QUALIFIED IMMUNITY *AND*
## GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE

Presently before the Court are the following motions jointly filed by Defendants Winston

County, Mississippi; Warden Tim Palmer; Sheriff Jason Pugh; and Nurse Lynn White: a motion

to dismiss or in the alternative for summary judgment based on qualified immunity [23] and a

motion to strike [59] the affidavit of Darrell Fuller attached to Plaintiffs' response to the

qualified immunity motion. Upon due consideration, the Court finds that the motion to strike

1

[59] should be granted in part and denied in part, and that the qualified immunity motion [23] should be granted.

## *A. Factual and Procedural Background*

On November 19, 2012, Plaintiffs commenced this suit against Defendants Winston County, Mississippi ("Winston County"); Sheriff Jason Pugh, in his individual and official capacity as Sheriff of Winston County ("Sheriff Pugh"); Warden Tim Palmer, in his individual and official capacity as Warden of the Winston-Choctaw County/Regional Correctional Facility[1] ("Warden Palmer"); Nurse Lynn White, in her individual and official capacity as an employee of the Winston-Choctaw County/Regional Correctional Facility ("Nurse White"); the City of Louisville, Mississippi; L.M. Claiborne, Jr., in his individual and professional capacity as the Chief of Police, City of Louisville ("Chief Claiborne"); Wexford Health Sources, Incorporated ("Wexford"); and various John and Jane Does.[2] Plaintiffs seek damages in connection with the death of the Decedent James Lee (the "Decedent").

Plaintiffs' complaint asserts under 42 U.S.C. § 1983 that Defendants violated the Decedent's Eighth Amendment and Fourteenth Amendment rights to be free from cruel and unusual punishment; failed to provide adequate supervision and security; failed to train and manage or improperly trained and managed their agents, servants, and employees to assure adequate delivery of medical care to the Decedent; failed to establish and implement policies, practices, and procedures to assure adequate delivery of medical care to the Decedent; and that

---

[1] According to the Mississippi Department of Corrections, the correct name of the facility is the Winston-Choctaw County/Regional Correctional Facility. *See* MDOC, List of County/Regional Facilities, http://www.mdoc.state.ms.us/county%20regional%20facilities.htm.

[2] The parties subsequently agreed to dismiss Chief Claiborne and Wexford as Defendants. *See* Stipulation of Dismissal [22] as to Chief Claiborne; Agreed Order of Dismissal [26] as to Wexford.

2

Winston County and the City of Louisville were engaged in a § 1983 conspiracy to enforce unconstitutional City policy.

The following facts are not in dispute. The Decedent was incarcerated at the Winston-Choctaw County/Regional Correctional Facility (the "WCCRCF") for unpaid fines and/or misdemeanor reasons from October 4, 2011 through December 6, 2011. The WCCRCF has in place a sick-call procedure, which inmates and detainees can use for medical treatment. During the Decedent's subject two-month incarceration, he submitted at least twelve sick-call requests. On November 25, 2013, the Decedent complained of hemorrhoids and rectal bleeding. The Decedent was given hemorrhoid treatment and Tylenol. The Decedent subsequently saw a medical doctor at the WCCRCF who recommended intravenous antibiotics and surgery. On December 6, 2011, the Decedent was released from custody. On July 16, 2013, the Decedent died.

Plaintiffs allege that during the Decedent's subject incarceration Defendants acted with deliberate indifference to the Decedent's medical needs, refusing to provide adequate medical treatment, delaying medical treatment, and denying him the necessities of life. Plaintiffs aver that as a result of Defendants' alleged deliberate indifference, the Decedent underwent multiple surgeries, including one to remove his colon, and eventually died after being transported to the hospital. Plaintiffs allege that Defendants committed the following acts amounting to deliberate indifference: denied the Decedent access to medical personnel and health care staff qualified to address his problem, failed to inquire into facts necessary to make a professional judgment on his condition, interfered with medical judgment by non-medical factors such as cost, failed to carry out medical orders of the doctor who said the Decedent needed surgery, and "[e]xercised judgment so egregiously bad that it really isn't medical" in that the Decedent constantly bled

3

from his rectum and was not adequately treated. Pls.' Compl. [1] ¶ 34. Plaintiffs seek compensatory damages, punitive damages, and attorney's fees under 42 U.S.C. § 1988(b).

On April 25, 2013, Winston County, Sheriff Pugh, Warden Palmer, and Nurse White (collectively, "these Defendants") filed the present motion to dismiss or in the alternative for summary judgment pursuant to qualified immunity [23].[3] The parties engaged in immunity-related discovery. Plaintiffs filed a response to the motion, and these Defendants filed a reply. On November 5, 2013, these Defendants filed the present motion to strike [59] the affidavit of Darrell Fuller which was Plaintiffs attached to their response to the qualified immunity motion. Plaintiffs filed a response to the motion, and these Defendants filed a reply. These matters are now ripe for review. The Court finds as follows.

### B. Motion to Strike

As an initial matter, the Court addresses these Defendants' motion to strike [59] certain portions of the affidavit of former WCCRCF inmate, Darrell Fuller (the "Fuller Affidavit"). Under Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, affidavits generally are admissible summary judgment evidence. Rule 56(c)(4) provides: "An affidavit . . . used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." The Court "has broad discretion in its decisions to admit evidence." *United States v. Torres*, 114 F.3d 520, 525–26 (5th Cir. 1997). These Defendants argue that certain portions of the Fuller Affidavit (i) contain hearsay, (ii) are not based on personal knowledge, and (iii) contain improper lay opinions.

---

[3] The Court notes that Defendant the City of Louisville did not join in the motion.

### i. Hearsay

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). A district court may not properly consider hearsay evidence when considering whether a genuine dispute of material fact exists. *Gibbs v. Lynn*, 8 F.3d 21, 1993 WL 455611, at *2 (5th Cir. Oct. 22, 1993) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (citations omitted)). These Defendants argue that certain statements in the Fuller Affidavit are hearsay: "I heard [the Decedent] tell the guards he wanted to get out to get medical help. I also told guards [the Decedent] was going to die if they didn't get him help." *See* Fuller Aff. [56-1] ¶ 6. These Defendants further argue that the following statement is hearsay within hearsay: "Several of us asked the guards to get him help on multiple times." *See id.* ¶ 7. These Defendants maintain that Plaintiffs have offered these statements for the truth of the matters asserted, that is, to show knowledge of the condition of the Decedent, and thus that the statements are inadmissible. Plaintiffs maintain that the cited statements are not offered for the truth of the matters asserted, but to show that these Defendants knew or had notice of the Decedent's condition.

"[A] statement does not fall under the hearsay rule if it was offered, not to prove the truth of the matter asserted, but to prove that the statement was made." *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988); *accord Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 660 (5th Cir. 2002) (testimony of three other complaints of sexual harassment was not hearsay because it was offered to prove that the employer was on notice rather than for the truth of the matter asserted), *abrogation on other grounds recognized by McCoy v. City of Shreveport, La.*, 492 F.3d 551, 559 (5th Cir. 2007); *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221,

1230 (5th Cir. 1984) (testimony offered to prove a party had knowledge or notice is not hearsay because "the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay").

The Court finds that the first two statements cited by these Defendants ("I heard [the Decedent] tell the guards he wanted to get out to get medical help. I also told guards [the Decedent] was going to die if they didn't get him help.") are admissible to show that these Defendants had knowledge or notice of the Decedent's medical condition. The third cited statement ("Several of us asked the guards to get him help on multiple times.") is inadmissible on other grounds, as explained below.

### ii. Personal Knowledge

As stated above, Rule 56(c)(4) provides that an affidavit used to oppose a motion must be based on personal knowledge. These Defendants argue that certain statements in the Fuller Affidavit were made without personal knowledge, specifically: "[The Decedent] was bleeding out his rectum for about two weeks," Fuller Aff. [56-1] ¶ 4; "[i]t was a smell that no one could miss," *id.*; "[t]he guards knew the infection was present," *id.* ¶ 5, and "would leave extra cleaning supplies for us to try to disinfect," *id.* ¶ 6; "[the guards] would send [the Decedent] to nurses who would not help him," *id.*; and "[s]everal of us asked the guards to get him help on multiple times," *id.* ¶ 7. These Defendants maintain that, although Fuller may have observed the Decedent in the zone where they were both incarcerated, no medical treatment was ever provided in the zone in front of other inmates; thus, these Defendants maintain that Fuller could not have participated in the matters in which he avers to have personal knowledge. These Defendants also argue that Fuller's status as an inmate does not allow the inference that he would have personal knowledge of the medical treatment of any other inmate in a private setting elsewhere.

Plaintiffs argue that Fuller "should be allowed testify to the matters he obviously witnessed and experienced during his incarceration." *See* Pls.' Resp. Opp'n to Defs.' Mot. Strike [61] at 2. Plaintiffs maintain that Fuller explains how he has personal knowledge of the matters contained in his affidavit when he states: "I was incarcerated in the [WCCRCF] during November and December, 2011" and "I have personal knowledge of the condition of [the Decedent] as I witnessed his condition at this time." *See* Fuller Aff. [56-1] ¶¶ 2–3. Plaintiffs further maintain that Fuller is allowed to testify as to his perception and on matters which prove notice on the part of these Defendants.

The Court finds that Plaintiffs have shown that Fuller's statements about the Decedent's bleeding from his rectum, the smell in the cell, that the guards would leave extra cleaning supplies for the inmates to disinfect the cell, and that the guards would send the Decedent to the nurses appear to be based on Fuller's own personal observations while he was incarcerated with the Decedent, and thus are not inadmissible on this basis. However, the statements that "[t]he guards knew the infection was present," *id.* ¶ 5; the nurses "did not help [the Decedent]," *id.* ¶ 6; and "[s]everal of us asked the guards to get him help on multiple times" are inadmissible because Plaintiffs have failed to demonstrate that Fuller has personal knowledge of these matters. Whether the guards knew that the Decedent was allegedly infected is by its nature not within Fuller's personal knowledge. Similarly, Plaintiffs have not demonstrated that Fuller had personal knowledge of whether the nurses helped the Decedent. Finally, the statement that "[s]everal of us asked the guards to get him help on multiple times" is impermissibly vague, referencing statements made by unnamed inmates to the guards for an unspecified duration.

Thus, these three statements are stricken from the Fuller Affidavit as inadmissible summary judgment evidence.[4]

### iii. Lay Opinions

Under Rule 701 of the Federal Rules of Evidence, a lay witness may not give an opinion that requires "scientific, technical, or other specialized knowledge within the scope of Rule 702." Thus, "a lay opinion must be based on personal perception [and] must be one that a normal person would form from those perceptions . . . ." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (internal quotation marks and citation omitted). These Defendants point to statements in the Fuller Affidavit they contend express improper lay opinions: "[the Decedent] was in bad shape medically," Fuller Aff. [56-1] ¶ 4; "[i]t was clearly infected as it had the smell of infection which I am familiar with," *id.*; "[t]he nurse would not give him anything for the infection," *id.* ¶ 6; "[a]nyone could see he was in bad shape," *id.*; and "[the Decedent] was losing a lot of blood every day," *id.* ¶ 7.

Plaintiffs argue that none of these statements expresses a medical opinion or requires specialized knowledge. Plaintiffs further argue that a lay witness can testify about anything that is rationally based on the witness's perception, including the presence of blood and first-hand perceptions of the Decedent's physical condition. Plaintiffs further argue that there is a factual dispute as to whether the nurse gave the Decedent anything for the infection.

Fuller can testify as to the amount of blood he saw present in the cell and any other such personal observations, as such statements are proper lay opinions. However, his statement that "[t]he nurse would not give [the Decedent] anything for the infection," *id.* ¶ 6, is an improper lay opinion. As a lay witness, Fuller is not qualified to testify whether the Decedent had an

---

[4] However, even if the Court had considered these stricken statements as part of the summary judgment record, the statements would not have affected the Court's ruling on the qualified immunity motion.

infection. Thus, that statement is stricken from the Fuller Affidavit as inadmissible summary judgment evidence.[5] The Court now turns to the qualified immunity motion.

## *C. Legal Standard*

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because in considering the present motion to dismiss or in the alternative for summary judgment [23] the Court has reviewed the parties' attached matters outside the pleadings which the Court shall not exclude, the motion shall be considered a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548.

---

[5] As with the previous stricken statements, even if the Court had considered this stricken statement as part of the summary judgment record, the statement would not have affected the Court's ruling on the qualified immunity motion.

9

Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Tex. Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County, Tex.*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *See id.*; *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present absolute proof but must offer more than mere allegations).

In ruling on a motion for summary judgment on qualified immunity grounds, the Court must first determine whether the allegations in the complaint are sufficient to negate the defendant's assertions of qualified immunity. *See Fleming v. Tunica County, Miss.*, 497 F. App'x 381, 388 (5th Cir. 2012) (per curiam) (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)). "Negating qualified immunity 'demands more than bald allegations and conclusionary statements.' " *Id.* (quoting *Wicks*, 41 F.3d at 995). "[I]f the actions [that a defendant official] claims he took are different from those [the plaintiff] allege[s,] . . . then discovery may be necessary before [the official]'s motion for summary judgment on qualified immunity grounds can be resolved." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). However, the plaintiff "must allege facts specifically focusing on the conduct of [the individual defendants] which caused his injury." *See Fleming*, 497 F. App'x at 388. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

### D. Analysis and Discussion

These Defendants argue that they are entitled to qualified immunity as to the claims against them which are all asserted under 42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, —— U.S. ——, ——, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012) (quoting § 1983). "Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *See id.*, 132 S. Ct. at 1661; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). However, such state actors enjoy

various protections from liability derived from the common law, such as absolute or qualified immunity. *See Filarsky*, 132 S. Ct. at 1660, 1662 (it is well settled that "common law protections well grounded in history and reason had not been abrogated by covert inclusion in the general language of § 1983") (internal quotation marks and citations omitted).

### i. Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, —— U.S. ——, ——, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012); *see Ashcroft v. al-Kidd*, 563 U.S. ——, ——, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); *Murrell v. Chandler*, 277 F. App'x 341, 343 (5th Cir. 2008) (per curiam) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). Plaintiffs seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 131 S. Ct. at 2080 (internal citation omitted). Courts have discretion to decide which prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

These Defendants concede that Plaintiffs have alleged a violation of a constitutional right, specifically, a violation of the Eighth Amendment and/or Fourteenth Amendment to be free from cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). However, these Defendants maintain that Plaintiffs have failed to present evidence to support their Eighth Amendment and/or Fourteenth Amendment violation

claims or their other claims under § 1983, and thus, that these Defendants are entitled to qualified immunity on all claims against them.

First, the Court will determine whether these Defendants are qualifiedly immune from suit on Plaintiffs' claim that these Defendants acted with deliberate indifference to the Decedent's serious medical needs in violation of the Eighth Amendment and/or Fourteenth Amendment. Second, the Court will determine whether these Defendants are qualifiedly immune from suit on Plaintiffs' claims that these Defendants failed to establish and implement policies, practices, and procedures to assure adequate delivery of medical care to the Decedent; that Winston County and the City of Louisville were engaged in a § 1983 conspiracy to enforce unconstitutional City policy; that these Defendants failed to provide adequate supervision and security; and that these Defendants failed to train and manage or improperly trained and managed their agents, servants, and employees to assure adequate delivery of medical care to the Decedent.

Apparently, the Decedent was convicted and sentenced of misdemeanor offenses in Louisville Municipal Court and then incarcerated at the WCCRCF pursuant to an interlocal agreement with the City of Louisville. Thus, the Court will apply the Eighth Amendment's subjective deliberate-indifference standard. The Fifth Circuit has stated:

> Pretrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. . . . The State cannot punish a pretrial detainee. . . . Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process

13

> rights are said to be at least as great as the Eighth Amendment
> protections available to a convicted prisoner.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (internal quotation marks and citations omitted; emphases in original). Although a distinction is drawn between the rights of pretrial detainees and convicted prisoners, "no constitutionally relevant difference exists between the rights of pre-trial detainees and convicted prisoners to be secure in their basic human needs." *Id.* at 647. "The deliberate-indifference standard applies when determining whether a jail official's episodic act or omission violated a [an inmate's constitutional] right to medical care and to be secure from harm, including self-inflicted harm." *Kane ex rel. Kane v. County of Hardeman, Tex.*, 254 F.3d 1081, 2001 WL 564126, at *1 (5th Cir. May 17, 2001) (per curiam) (citing *Hare*, 74 F.3d at 647–48).

Plaintiffs have not alleged a Fourteenth Amendment claim separate from the Decedent's Eighth Amendment right to be free from cruel and unusual punishment—which is asserted against state actors through the Fourteenth Amendment anyway.[6] Thus, the Eighth Amendment is the proper vehicle for the claim. *See Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . . "). Allowing a factually identical Fourteenth Amendment due process claim would be superfluous. Therefore, the Court finds that the Fourteenth Amendment claim against these Defendants is properly dismissed. As such, the Court will now examine first the applicable law and then the merits of the deliberate indifference claim against these Defendants.

---

[6] The Eighth Amendment by its own terms applies only to the federal government and is applicable to states only through the due process clause of the Fourteenth Amendment. *See Tuilaepa v. California*, 512 U.S. 967, 970, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994).

14

The Eighth Amendment's proscription of cruel and unusual punishments is violated by "deliberate indifference to serious medical needs of prisoners." *See Estelle*, 429 U.S. at 104, 97 S. Ct. 285. The Eighth Amendment requires jail officials to ensure that inmates receive adequate medical care. *Farmer*, 511 U.S. at 832, 114 S. Ct. 1970. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and this includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–105, 97 S. Ct. 285 (footnotes and internal quotation marks omitted).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Such a showing requires a plaintiff to produce evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Estelle*, 429 U.S. at 107, 97 S. Ct. 285). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Pomier v. Leonard*, 532 F. App'x 553, 554 (5th Cir. 2013) (per curiam) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001); *see Hare*, 74 F.3d at 645, 649–50. Rather, only deliberate indifference to serious medical needs can violate the Eighth Amendment. Allegations of "inadvertent failure to provide adequate medical care or of a negligent . . . diagnos[is] simply fail to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation marks and citations omitted).

15

As the Supreme Court explained in *Farmer*:

> An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* [W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON LAW OF TORTS] §§ 2, 34, pp. 6, 213–214 [(5th ed. 1984)]; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; *United States v. Muniz*, 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

511 U.S. at 837–38, 114 S. Ct. 1970. However, the Supreme Court further explained: "Under the [subjective deliberate-indifference] test we adopt today, [a] claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S. Ct. 1970 (citing Cf. 1 C. TORCIA, WHARTON'S CRIMINAL LAW § 27, p. 141 (14th ed. 1978)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . , and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*, 114 S. Ct. 1970 (internal citations omitted). Still, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. 1970.

The Fifth Circuit requires a plaintiff bringing a subjective deliberate-indifference claim to show the following: (i) "that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn"; (ii) "that each defendant actually

drew that inference"; and (iii) "that each defendant's response to the risk indicates that the [defendant] subjectively intended that harm occur." *Blank v. Eavenson*, 530 F. App'x 364, 368 (5th Cir. 2013) (per curiam) (quoting *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (per curiam) (internal quotation marks and citation omitted)). With all of the foregoing in mind, the Court turns to the merits of the Eighth Amendment claim against Sheriff Pugh, Warden Palmer, and Nurse White in their individual capacities, and then turns to the merits of the other § 1983 claims against Winston County and Sheriff Pugh, Warden Palmer, and Nurse White in their official capacities.

## Sheriff Pugh in his individual capacity

The Decedent's subject incarceration at the WCCRCF was from October 4, 2011 to December 6, 2011. It is undisputed that Sheriff Pugh took office on January 2, 2012, approximately one month after the Decedent was released from his subject incarceration. Thus, as these Defendants maintain, Sheriff Pugh was not a government official at the time of these alleged incidents. Moreover, Plaintiffs have not alleged facts or presented evidence rebutting these Defendants' argument and showing that Sheriff Pugh had any personal involvement in the alleged Eighth Amendment violation. Accordingly, the Court finds no basis for liability for Sheriff Pugh for personal involvement in the alleged Eighth Amendment violation. *See Paris v. Thomas*, 51 F.3d 1045, 1995 WL 153262, at *2 (5th Cir. 1995) (per curiam); *see generally Oliver v. Collins*, 904 F.2d 278 (5th Cir. 1990). Thus, Sheriff Pugh is entitled to qualified immunity on this claim.

## Warden Palmer in his individual capacity

Warden Palmer was in office at the time of the alleged incidents, but these Defendants maintain that he did not play a direct role in the treatment of the Decedent and did not prevent

17

any medical care to the Decedent, as evidenced by the Decedent's medical records and the deposition of Warden Palmer. Plaintiffs do not dispute any of these statements in their response to the qualified immunity motion.

In their complaint, Plaintiffs allege that Warden Palmer, among others, "knew or should have known of [the] horrific condition [the Decedent] was in due to the putrid smell" that made it necessary to ventilate the zone in which the Decedent was housed, and that all Defendants, including Warden Palmer, failed to have the Decedent seen and treated by a doctor and ignored signs of the Decedent's worsening health and were thus deliberately indifferent to a substantial risk of serious harm to the Decedent. Pls.' Compl. [1] ¶¶ 14, 22, 28, 30. However, conclusory allegations are not sufficient to create a genuine dispute of material fact. Warden Palmer testifies in his deposition: "I had no personal involvement in [the Decedent's] medical care and treatment." Palmer Dep. [56-3] at 83. The only evidence to connect Warden Palmer to the Decedent's medical care is Nurse White's testimony that she answered to Warden Palmer and the Sheriff, and the testimony of both Nurse White and Warden Palmer that Nurse White had informed Warden Palmer of her attempts to get the Decedent medical care for his condition. *See* White Dep. [56-2] at 123; Palmer Dep. [56-3] at 23–24. Plaintiffs have offered no evidence raising a genuine dispute that Warden Palmer was personally involved in the Decedent's medical treatment, and certainly have not offered any evidence to show that Warden Palmer intentionally ignored the Decedent's medical condition or complaints or that he denied or delayed the Decedent's treatment. *See Scott*, 550 U.S. at 380, 127 S. Ct. 1769; *Domino*, 239 F.3d at 756; *see also Lee v. Rushing*, 530 F. App'x 315, 317 (5th Cir. 2013) (per curiam). Accordingly, the Court finds no basis for liability for Warden Palmer for personal involvement in the alleged Eighth

Amendment violation. *See Paris*, 1995 WL 153262, at *2; *see generally Oliver*, 904 F.2d 278. Thus, Warden Palmer is entitled to qualified immunity on this claim.

### Nurse White in her individual capacity

Nurse White was employed as a nurse at the WCCRCF at the time of the Decedent's subject incarceration. These Defendants maintain that "Nurse White's involvement with the [Decedent,] [p]roviding treatment to him, calling in a physician[,] and requesting advisement on the [Decedent's] condition, does not evince a wanton disregard for the medical needs of the [Decedent]." Defs.' MSJ [23] at 4. These Defendants further maintain that Nurse White treated the Decedent during most of his stays at the WCCRCF, including during the time of his subject incarceration, and that the Decedent's medical records demonstrate the following: (1) each time the Decedent requested a sick call, he was seen by medical personnel; (2) there was no delay, refusal, or intentionally incorrect treatment; (3) when the Decedent continued to complain of medical problems, a physician at the WCCRCF saw him; and (4) when he needed treatment beyond the capabilities of the WCCRCF, these Defendants promptly notified the Decedent, and since the Decedent was a City of Louisville inmate, also notified the City of Louisville.

These Defendants contend that the Decedent did not mention nor complain of hemorrhoids or an abscess until late November 2011, and that Nurse White treated those new complaints just as she had attended to the Decedent on prior occasions. These Defendants further contend that when the Decedent continued to complain he was referred to and seen by a physician who recommended a level of care not available at the facility. These Defendants maintain that the WCCRCF promptly contacted the referring authority, the City of Louisville, to advise of this determination, and that the City of Louisville then released the Decedent so that he could seek additional medical care. Overall, these Defendants maintain that Plaintiffs have

19

failed to demonstrate deliberate indifference on the part of Nurse White in her individual capacity.

Plaintiffs argue that Nurse White's deposition testimony demonstrates that she knew of the Decedent's deteriorating condition, specifically with regard to the bleeding from his rectum, as early as November 25, 2011, but in general with regard to his stomach and abdomen much sooner. Plaintiffs maintain that Nurse White's testimony that "[the Decedent] was fine, until he wasn't" is seriously refuted by the medical records themselves and by the Fuller Affidavit. Plaintiffs point to Nurse White's deposition testimony that on the Decedent's first day of incarceration at the WCCRCF he had "visible signs of trauma or illness requir[ing] immediate emergency or doctor's care." White Dep. [56-2] at 80–81; *see* Decedent's Med. Recs. [23-2] at WC-0077. However, Plaintiffs maintain that the Decedent was not provided this care. Plaintiffs further assert that although the Decedent had told her he was recovering from pancreatic cancer and that half of his intestines had been removed, Nurse White testified in her deposition: "I thought I had written it down somewhere, but I'm not able to find it." White Dep. [56-2] at 85–86.

Plaintiffs also point to specific instances in the record that they contend constitute medical decisions showing deliberate indifference: the decision to give the Decedent Maalox when he complained of abdominal pains and the decision to give the Decedent hemorrhoid treatment and Tylenol when he complained of hemorrhoids and rectal bleeding. Finally, Plaintiffs point to Fuller's personal observations that the Decedent had suffered rectal bleeding for about two weeks, that the odor was "horrible" and "everywhere in the zone," that it was apparent that the Decedent "was in bad shape," that the Decedent told the guards he wanted to

20

get out to get medical help, and that Fuller told the guards the Decedent "was going to die if they didn't get him help." Fuller Aff. [56-1] ¶ 6.

Even assuming that Plaintiffs have demonstrated that Nurse White had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn based upon her knowledge of the Decedent's past history of health conditions, including strokes and pancreatic cancer, Plaintiffs have failed to raise a genuine dispute that Nurse White "disregard[ed] [the] risk by failing to take [objectively] reasonable measures to abate it." *See Burton v. Owens*, 511 F. App'x 385, 389 (5th Cir. 2013) (per curiam) (citing *Farmer*, 511 U.S. at 847, 114 S. Ct. 1970). "To impose liability, 'the [Plaintiffs] must show that [Nurse White] 'refused to treat [the Decedent], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *See id.* (quoting *Domino*, 239 F.3d at 756 (in turn quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). The uncontroverted facts that the Decedent had serious health problems, including recovering from pancreatic cancer and his subsequent rectal bleeding during the subject incarceration, do not alone present a genuine dispute of material fact sufficient to overcome a qualified immunity defense on the deliberate indifference issue. *See Martin v. Seal*, 510 F. App'x 309, 315 (5th Cir. 2013) (per curiam) (the uncontroverted fact that plaintiff had a health condition was not sufficient to foreclose qualified immunity defense on deliberate indifference issue).

Plaintiffs allege that the Decedent was denied medical care for his serious medical problems while he was incarcerated at the WCCRCF, but the evidence fails to support this allegation, particularly as it pertains to Nurse White. The evidence indicates that the WCCRCF had a sick-call policy whereby blank sick call request forms were made available to the inmates,

21

who could complete a form if they desired medical treatment and place their completed forms in a slot designated for this purpose and that Nurse White would go by every morning and pick up the completed sick-call request forms. *See* WCCRCF Policy & Procedures Manual [23-3] at WC-0148, WC-0157; White Dep. [56-2] at 25–26.

The evidence further shows that the Decedent submitted at least twelve sick-call requests during his subject two-month incarceration and that Nurse White saw the Decedent on at least twelve occasions during that time, advised him of how to treat his complaints, and offered him specific medications for this purpose. During his subject two-month incarceration, the Decedent complained of back pain for which he was given Tylenol or ibuprofen, *see* 10/07/2011, 10/11/2011, 10/27/2011, 10/31/2011, 11/11/2011, & 11/17/2011 Sick-Call Requests [23-2] at WC-0079, WC-0080, WC-0090–0094, and stomach pain for which he was given Tylenol and Maalox and put on a bland diet, *see* 10/13/2011, 10/14/2011, & 10/20/2011 Sick-Call Requests [23-2] at WC-0086, WC-0087, WC-0088. During the latter part of his subject incarceration, the Decedent complained of back pain and hemorrhoids for which he was given hemorrhoid ointment and Tylenol and it was noted on the form by Nurse White that "[h]emorrhoids are causing some rectal bleeding now at times." *See* 11/26/2011 Sick-Call Request [23-2] at WC-0095. Subsequently, on December 2, 2011, the Decedent complained of back pain and was given Tylenol. *See* 12/2/2011 Sick-Call Request [23-2] at WC-0096. On December 5, 2011, the Decedent complained of hemorrhoids and back pain and Nurse White gave the Decedent Tylenol and told him to apply warm moist heat to the area of the draining abscess. *See* 12/5/2011 Sick-Call Request [23-2] at WC-0097.

Plaintiffs' allegations and the summary judgment evidence further indicate that on December 5, 2011 Nurse White called and left Chief Claiborne two separate messages to call her

22

back, and that when Chief Claiborne returned her call Nurse White told him that the Decedent "did need antibiotics, I was sure of that, and that he needed to see a doctor." *See* White Dep. [56-2] at 101; *see also* Pls.' Compl. [1] ¶¶ 15, 17; White Notes [23-2] at WC-0098–0099. Nurse White also apparently arranged for the Decedent to be seen by the facility doctor, who subsequently diagnosed the Decedent with an infection and ordered that he be given intravenous fluids and surgery to remove the rectal abscess. White Dep. [56-2] at 101–02. The evidence further shows that because the WCCRCF was not equipped to handle that level of care, Chief Claiborne released the Decedent from custody so that he could seek further medical treatment. Nurse White testifies that both she and the facility doctor advised the Decedent to see his medical doctor or get checked into the emergency room the day of his release. *Id.* at 110.

Plaintiffs seek to hold Nurse White liable for her choices of treatment for the Decedent's complaints, claiming that her actions led to the worsening of the Decedent's condition. However, the record demonstrates that Nurse White acted on the basis of her own professional judgment based on her knowledge as a nurse. The Supreme Court stated in *Estelle* that even a

> complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 106, 97 S. Ct. 285. Plaintiffs have not alleged acts or omissions sufficiently harmful to constitute deliberate indifference to the Decedent's serious medical needs. Even if Nurse White should have recommended additional forms of treatment, such a situation is "a classic example of a matter for medical judgment" which "does not represent cruel and unusual

23

punishment" and "at most . . . is medical malpractice." *Id.* at 107, 96 S. Ct. 285. The Fifth Circuit has repeatedly stated that "[a] disagreement with the treatment received or even a complaint of negligence or malpractice is insufficient to give rise to a [§] 1983 claim." *See Paris*, 1995 WL 153262, at *2 (citing *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991)); *see also Galindo v. Altenberg*, ___ F. App'x ___, 2014 WL 171536, at *1 (5th Cir. Jan. 16, 2014) (per curiam) (stating that "even if [plaintiff] had submitted medical expert reports showing that the defendants violated the community standard of care by failing to obtain an MRI, negligence, medical malpractice, and disagreements with diagnostic measures are insufficient to give rise to a claim of deliberate indifference").

Plaintiffs further seek to impose liability alleging that the decision not to provide surgery to the Decedent but instead to release him to seek medical treatment constituted deliberate indifference. Looking to the summary judgment evidence pertaining to the terms of the Decedent's release, the Decedent was incarcerated at the WCCRCF pursuant to an interlocal agreement with the City of Louisville under the terms of that agreement; the Decedent had the option of sitting out the fine at a rate of $25 per day or setting up a payment plan with Louisville Municipal Court. Palmer Dep. [56-3] at 27; Claiborne Dep. [56-4] at 23–28. According to Warden Palmer's testimony, it was common practice for the City of Louisville to incarcerate an individual at the WCCRCF without an official court order or sentence of incarceration at a time period determined by the City of Louisville. *See* Palmer Dep. [56-3] at 30, 32.

Nurse White testifies that she contacted Chief Claiborne on December 5, 2011 to inform him that the Decedent needed medical care that was beyond that available at the WCRRCF and that Chief Claiborne agreed to release him on December 6, 2011 so that the Decedent could seek further medical care. *See* White Dep. [56-2] at 107, 112. It is undisputed that Chief Claiborne

24

then released the Decedent. The evidence shows that the Decedent was released with the understanding that he had made payment arrangements for his fines. *See* Palmer Dep. [56-3] at 34, 66–67; Claiborne Dep. [56-4] at 50–51; Booking Report [23-2] at WC-0073. The evidence further shows that the Decedent was instructed by both Nurse White and the facility doctor to see his medical doctor or be admitted to the emergency room at the hospital that day for treatment of his medical condition. *See* White Dep. [56-2] at 110, 133. Nurse White testifies the recommended surgery "was not an urgent matter, but it was a matter that needed to be taken care of." *See id.* at 114; *see also id.* at 134 ("He was in the second [level of triage]. He needed to go to his doctor that day."). According to Nurse White's testimony, the Decedent acknowledged that he had heard these instructions. These Defendants contend that if the Decedent failed to follow these instructions, any consequences that resulted from a delay of medical treatment cannot be attributed to these Defendants (including Nurse White). Plaintiffs have offered no conflicting evidence to create a genuine dispute that Nurse White's involvement in the decision to release the Decedent constituted deliberate indifference.

Further, to the extent Plaintiffs have alleged that Nurse White delayed medical treatment for the Decedent, "[a] delay in treatment does not violate the Eighth Amendment unless the denial or delay was the result of the defendant's deliberate indifference and harm was suffered during the delay." *Brown v. Cain*, ___ F. App'x. ___, 2013 WL 5881213, at *3 (5th Cir. Nov. 4, 2013) (per curiam) (citing *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006)). It is undisputed that Nurse White placed several calls to Chief Claiborne concerning the Decedent's serious medical condition and his need for medical care that could not be provided by the WCCRCF. *See* Pls.' Compl. [1] ¶¶ 15, 17; Decedent's Med. Recs. [23-2] at WC-0079–0097; White Notes [23-2] at WC-0098–0099.

For all of these reasons, the allegations against Nurse White do not rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 293, 92 S. Ct. 285; *Davis v. Michot*, 537 F. App'x 566, 567 (5th Cir. 2013) (per curiam). It is apparent from Plaintiffs' complaint and the summary judgment evidence that Nurse White was not indifferent to the Decedent's needs, nor did she disregard the risk of serious harm to the Decedent by failing to take objectively reasonable measures to abate it. Therefore, Plaintiffs have failed to show that Nurse White acted with deliberate indifference to the Decedent's medical needs, and Nurse White is entitled to qualified immunity on this claim.

### Winston County, as well as Sheriff Pugh, Warden Palmer, and Nurse White in their official capacities

Plaintiffs also assert claims that Winston County failed to establish and implement policies, practices, and procedures to assure adequate delivery of medical care to the Decedent; that the alleged actions were carried out pursuant to the City of Louisville's unconstitutional policy or custom of refusing medical treatment and in conspiracy with Winston County; that this policy was the moving force behind the alleged constitutional violations; and that Winston County failed to train or supervise its staff on how to provide the delivery of medical care to inmates, including the Decedent. *See* Pls.' Compl. [1] ¶¶ 23, 25, 33. These Defendants maintain that the Decedent's medical records refute Plaintiffs' contention that the Decedent's constitutional rights were violated by these Defendants. These Defendants further maintain that Winston County's policies relating to medical treatment of inmates at the WCCRCF directly contradict Plaintiffs' claims. Plaintiffs do not dispute any of these statements in their response to the qualified immunity motion. The Court finds as follows.

### a. Policy

In order for Winston County to be liable under § 1983, Plaintiffs must establish deliberate indifference by reference to an official custom or policy. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ("[T]here must be an affirmative link between the policy and the particular constitutional violation alleged."). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, —— U.S. ——, ——, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). These are "action[s] for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); *see Conner v. Travis County, Tex.*, 209 F.3d 794, 796 (5th Cir. 2000). Plaintiffs must show either "(1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences." *Walker v. Upshaw*, 515 F. App'x 334, 339 (5th Cir. 2013) (per curiam) (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 423, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997))).

The failure to establish or implement necessary policies, practices, and procedures can constitute a "policy or custom" for purposes of a *Monell* § 1983 suit, but only if that failure causes a constitutional violation. *See Collins v. City of Harker Heights*, 503 U.S. 115, 123–24, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). In those situations, plaintiffs generally must allege a

pattern or series of incidents of unconstitutional conduct or a clear constitutional duty to take action because the situation was certain to recur. In addition, the inaction must amount to deliberate indifference, so that it is fair to infer that the inaction is itself a "policy." *See Canton*, 489 U.S. at 389, 109 S. Ct. at 1205. Plaintiffs' claim for failure to establish or implement policy is premised on the same claim that the Decedent received constitutionally inadequate medical treatment. As discussed at length above, Plaintiffs have not established a constitutional problem with the Decedent's medical treatment and thus have not shown that the Decedent suffered actionable injury from the alleged inadequate policy Plaintiffs attribute to the Winston County policymakers. Instead, the summary judgment evidence shows that the Decedent received competent medical treatment for his medical condition during his subject incarceration. Thus, the claim fails on this ground.

The claim also fails because Plaintiffs have not provided evidence raising a genuine dispute of fact about the adequacy of the inmates' medical care policy. The WCCRCF policy and procedures manual is attached to these Defendants' qualified immunity motion and includes a comprehensive chapter on the inmate health care program. *See* WCCRCF Policy & Procedures Manual [23-3] at WC-0133–WC-0180. The manual provides that the Sheriff is the ultimate authority over the health care department at the WCCRCF, but that the facility doctor (who is a fully licensed physician authorized to practice medicine in the state) directs, manages, and oversees the facility health care services and is the final authority on matters of medical judgment. *Id.* at WC-0134–0135. The manual provides in pertinent part that "[i]t is the policy of the [WCCRCF] to provide health care, including continuous medical . . . health services, to all confined offenders, relying when necessary on the use of community care resources." *Id.* at WC-0134.

28

Plaintiffs have presented no evidence that the policy or lack thereof creates a serious risk of physical harm to inmates, much less that the Winston County policymakers knew of such a risk but did nothing. Plaintiffs have presented no evidence that the WCCRCF's policy on inmate medical care violated federal law or authorized or directed the deprivation of federal rights; nor have they presented evidence that the WCCRCF in any way failed to adopt policy that would ensure the delivery of medical care to inmates, including the Decedent. Similarly, Plaintiffs have not presented evidence that the WCCRCF's policy on inmate medical care was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences. Thus, these Defendants are entitled to qualified immunity on this claim.

Further, Plaintiffs' vague allegations of a conspiracy between the City of Louisville and Winston County to enforce unconstitutional City policy to refuse medical treatment are not sufficient to make out a § 1983 conspiracy claim. Importantly, Plaintiffs have not alleged an agreement between the City of Louisville and Winston County to enforce City policy that violated the Decedent's constitutional rights. "A plaintiff must 'allege specific facts to show an agreement.' " *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (quoting *Priester v. Lowndes County, Miss.*, 354 F.3d 414, 420 (5th Cir. 2004)). Therefore, Plaintiffs do not have a viable § 1983 conspiracy claim.   Thus, these Defendants are entitled to qualified immunity on this claim, as well.

### b. Supervisory Liability

Finally, Plaintiffs assert a claim that these Defendants failed to provide adequate supervision and security and failed to train and manage, or improperly trained and managed, their agents, servant, and employees to assure adequate delivery of medical care to the Decedent.

29

The Supreme Court has stated:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S. at 388, 109 S. Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S. Ct. 1197.

*Connick*, 131 S. Ct. at 1359–1360. To prevail on such a claim, Plaintiffs must prove that "(1) the official failed to train or supervise the correctional officers, (2) a causal link exists between the failure to train or supervise and the alleged violation of the inmate's rights, and (3) the failure to train or supervise amounted to deliberate indifference." *Walker*, 515 F. App'x at 339 (citing *Thompson*, 245 F.3d at 459) (in turn citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998))).

According to the WCCRCF policy and procedures manual, the facility doctor "oversee[s] the delivery of health care training for medical staff to enable employees to respond to health[-]related situations." *Id.* at WC-0137. The manual provides that the facility doctor "will ensure that outside medical resources and specialty treatment are offered in accord with pre-negotiated contracts so the total health care program offers the full range of health care for all offenders, including access to an adequately equipped, licensed general hospital in the community," *id.* at WC-0134–0135, and that one of the facility doctor's responsibilities is to train his or her staff on

"procedures for transferring offenders to appropriate medical facilities or health care providers when the needed services are not available in the facility," *id.* at WC-0146.

The Court notes that Plaintiffs have not asserted a failure-to-train-or-supervise claim against the facility doctor, but instead assert their claim against these Defendants—Winston County, Sheriff Pugh, Warden Palmer, and Nurse White. Any claim that these Defendants failed to train or supervise staff to provide medical care to inmates including the Decedent is conclusory and not supported by evidence. This is particularly true with respect to Nurse White, who was clearly a staff nurse and not in a supervisory role. Warden Palmer and Chief Claiborne testify that the WCCRCF is not responsible for the medical care of city inmates, including the Decedent, and that such inmates' medical care must either be provided by or paid for by the City of Louisville. Palmer Dep. [56-3] at 34–35; Claiborne Dep. [56-4] at 56. Therefore, the evidence does not support that these Defendants failed to properly train or supervise staff with regard to delivery of medical care to inmates, including the Decedent. Plaintiffs have not put forth evidence showing that these Defendants knew of and disregarded conditions posing a risk of serious harm to the Decedent. *Silva v. Moses*, ___ F. App'x ___, 2013 WL 5450799, at *2 (5th Cir. 2013) (per curiam) (citing *Roberts v. City of Shreveport, La.*, 397 F.3d 287, 292 (5th Cir. 2005)).

Moreover, because Plaintiffs have failed to allege facts showing a violation of the Decedent's constitutional rights by these Defendants, that is, deliberate indifference to the Decedent's serious medical needs, Plaintiffs concomitantly have failed to allege facts showing liability on the parts of these Defendants for their alleged failure to supervise or train staff. *See Roberts*, 397 F.3d at 292. Therefore, these Defendants cannot be liable on a failure-to-train-or-supervise claim. *See Corring v. Pearl River County, Miss.*, ___ F. App'x ___, 2013 WL

31

6705798, at *1 (5th Cir. Dec. 13, 2013) (citing *Hare*, 74 F.3d at 649 n.4). For all the foregoing reasons, these Defendants are entitled to qualified immunity on these claims.

### *E. Conclusion*

In sum, the motion to strike **[59]** filed by Defendants Winston County, Sheriff Jason Pugh, Warden Tim Palmer, and Nurse Lynn White is **GRANTED IN PART AND DENIED IN PART**; the motion to dismiss or in the alternative for summary judgment **[23]** based on qualified immunity filed by Defendants Winston County, Sheriff Jason Pugh, Warden Tim Palmer, and Nurse Lynn White is **GRANTED**; all claims against Defendants Sheriff Jason Pugh, Warden Tim Palmer, Nurse Lynn White, and Winston County are **DISMISSED**; and the stay on merits-discovery is **LIFTED**.

This ruling does not affect the viability of the claims against Defendant the City of Louisville; those claims remain viable.

A separate order in accordance with this opinion shall issue this day.

**THIS**, the __14th__ day of February, 2014.

<u>                                   </u>
SENIOR JUDGE